

# NUMBER 13-22-00595-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

GLENN EDWARD STEED,                                                  **Appellant,**

**v.**

HB1 ALTERNATIVE HOLDINGS, LLC,                          **Appellee.**

---

### On appeal from County Court at Law No. 5
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Tijerina**
**Memorandum Opinion by Chief Justice Contreras**

Appellant Glenn Edward Steed challenges the trial court's final judgment of possession granted in favor of appellee HB1 Alternative Holdings, LLC (HB1). *See* TEX. PROP. CODE ANN. § 24.002. By two issues, Steed argues (1) that the trial court lacked subject matter jurisdiction because title to the subject property was necessarily at issue,

and (2) that the trial court erred because he previously obtained a temporary restraining order (TRO) that "barred" the foreclosure sale of the subject property. We affirm.

## I.    BACKGROUND

Appellant's mother, Janet Steed, was the sole owner of the property located on Dorsal Street in Corpus Christi, Texas. On March 23, 2012, Janet executed a home equity conversion mortgage on the home, commonly called a reverse mortgage,[1] including a note in the amount of $495,000 and an "Adjustable Rate Home Equity Conversion Deed of Trust". The deed of trust listed "Janet K. Steed" as "Borrower," the aforementioned property as "the Property," and Generation Mortgage Company, the successor in interest to Nationstar Mortgage LLC, d/b/a Champion Mortgage Company (Champion), as "Lender." It stated in pertinent part:

> 22. Foreclosure; Power of Sale. It is the express intention of Lender and Borrower that Lender shall have a fully enforceable lien on the Property. It is also the express intention of Lender and Borrower that Lender's default remedies shall include the most expeditious means of foreclosure available by applicable law, including, without limitation, foreclosure under a power of sale. . . .

> If the Property is sold pursuant to this Paragraph 22, Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be tenants at sufferance and may be removed by writ of possession.

Janet defaulted on the loan at some point before her death in 2018. Champion sent notice of default to Janet's estate on September 12, 2018. Default was never cured,

---

[1] "A reverse mortgage allows homeowners, age [sixty-two] or older, to convert home equity into periodic payments or advances made by the lender over the life of the homeowners." *Washington-Jarmon v. Onewest Bank, FSB*, 513 S.W.3d 103, 105 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing J. Alton Alsup, *The New & Improved Texas Reverse Mortgage*, 55 CONSUMER FIN. L.Q. REP. 207, 209 (2001)).

and in February 2019, Champion filed suit against Janet's heirs, including Steed, to foreclose on the property. On July 15, 2020, Champion obtained a final judgment in district court allowing foreclosure. However, Steed challenged the foreclosure in a separate district court action and obtained a TRO effective August 31, 2021, which prevented the foreclosure sale from taking place.

The mortgage remained in default. In the proceeding in which the TRO was issued, the district court entered an agreed judgment on April 11, 2022, which dismissed Steed's claim against Champion and allowed Champion to proceed with foreclosure. On August 2, 2022, HB1 purchased the property during the foreclosure sale. On September 6, 2022, HB1 filed the instant forcible-detainer action in justice court seeking immediate possession of the property. An eviction notice was delivered to Steed on September 8, 2022. Steed did not appear, and the justice court entered a default judgment of eviction in favor of HB1.

Steed appealed the default judgment, and the county court held a de novo bench trial on November 14, 2022. Steed contended (1) that the TRO issued in August 2021 was still in effect and should have prevented the foreclosure sale from taking place; (2) he never agreed to, nor had any notice of, the agreed judgment in his district court case against Champion; and (3) he was never notified of the subsequent foreclosure sale on August 2, 2022.

At trial, Steed explained that the property was damaged by Hurricane Harvey in August 2017. He testified that Janet submitted an insurance claim to repair the home, but

3

the money was never received, and the repairs were never made.[2] He explained that the pending insurance claim prevented him from buying the home after it went into default, and the purpose of the TRO in his district court case was to give one year for the insurance company to pay Champion and then for Champion to "pay [him] to get the work taken car[e] of" on the house. He argued that he still had rightful possession of the home because the insurance money had never been issued and the TRO was still in effect. He also claimed that neither he nor his lawyer consented to the agreed judgment, insinuating that it was fraudulent.

The parties referenced the TRO multiple times, but it was not admitted into evidence. Quoting the TRO, Steed stated: "[Champion] is hereby immediately enjoined from the date of entry of this order until [fourteen] days after or until further order of this court." Steed argued that this language meant that the TRO was still in effect since there was no "further order" of the court. HB1 argued that there was no evidence that the original TRO was effective for longer than fourteen days, and there was no evidence that the TRO had become a temporary injunction. HB1 further argued that even if the TRO was in effect for longer than fourteen days, the agreed judgment rendered on April 11, 2022, was a "further order" and would have terminated the TRO. HB1 also argued that regardless of whether Steed was notified of the agreed judgment by his lawyer, the court records indicated that it was signed by Steed's attorney.

Finally, HB1 argued that any issue Steed had with notice of the foreclosure sale was irrelevant to who had the immediate right of possession of the property. The trial

---

[2] Steed did not provide a copy of the insurance claim during trial.

court admitted three exhibits offered by HB1 to prove its right to immediate possession of the property: (1) a copy of the substitute trustee's deed, evidencing the foreclosure sale and HB1's purchase of the property; (2) a copy of Janet Steed's reverse mortgage with Champion; (3) "a copy of a [n]otice of [i]ntent to file a business record affidavit along with that business record affidavit," which included a notice to vacate that was mailed to Steed.[3]

On November 29, 2022, the trial court entered final judgment and awarded HB1 possession of the property. This appeal followed.

## II.    SUBJECT MATTER JURISDICTION

By his first issue, Steed argues that the justice court did not have subject matter jurisdiction to grant HB1 possession of the property, and that the county court did not have jurisdiction over a trial de novo, because adjudication of HB1's forcible-detainer claim required resolution of a title dispute.

### A.    Standard of Review & Applicable Law

A person commits a forcible detainer if he or she "is a tenant at will or by sufferance" and "refuses to surrender possession of real property on demand." TEX. PROP. CODE ANN. § 24.002(a)(2). "The sole focus of a forcible-detainer action is the right to immediate possession of real property." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 478 (Tex. 2017). To establish superior right to possession, the plaintiff must show (1) the plaintiff owns the property, (2) the party occupying the property is a tenant at sufferance,

---

[3] To demand possession of real property, the person entitled to possession of the property must make a written demand for possession and comply with Texas Property Code § 24.005's requirements for a notice to vacate. *See* TEX. PROP. CODE ANN. §§ 24.002(b), 25.005; *see also* § 24.005(h) (providing that a notice to vacate is considered a demand for possession for purposes of section 24.002(b)).

5

(3) the plaintiff gave proper notice to the tenant to vacate the premises, and (4) the tenant refused to vacate the premises. *Id.*

"To prevail in a forcible[-]detainer action, a plaintiff is not required to prove title . . . . However, where the right to immediate possession necessarily requires resolution of a title dispute, the justice court has no jurisdiction to enter a judgment and may be enjoined from doing so." *Ward v. Malone*, 115 S.W.3d 267, 270 (Tex. App.—Corpus Christi–Edinburg 2003, pet. denied); *see* TEX. GOV'T CODE ANN. § 27.031(b)(4) ("A justice court does not have jurisdiction of . . . a suit for trial of title to land."). The mere existence of a title dispute does not deprive a justice court of jurisdiction; instead, "it is deprived of jurisdiction only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession." *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.) (citation omitted). "Thus, it is only when the justice or county court *must* determine title issues that it is without jurisdiction to adjudicate a forcible detainer case." *Rice v. Pinney*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.) (collecting cases).

Whether a court has subject matter jurisdiction is a question of law that we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). Subject matter jurisdiction cannot be waived and can be raised at any time, even for the first time on appeal. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). To determine the court's subject matter jurisdiction, we construe the pleading party's allegations in their favor, and examine the entire record when necessary. *Condit v.*

6

*Nueces County*, 976 S.W.2d 278, 280 (Tex. App.—Corpus Christi–Edinburg 1998, no pet.) (citations omitted).

**B.    Analysis**

Steed argues that the agreed judgment is void because his lawyer's signature was forged. Steed argues that the allegedly forged agreement creates a "genuine issue of title so intertwined with the issue of possession as to preclude" the trial court's jurisdiction. *See Yarbrough*, 455 S.W.3d at 283.

Steed cites *Yarbrough v. Household Finance Corp. III* for the proposition that an allegation of forgery deprives the court of subject matter jurisdiction. *See id.* In *Yarbrough*, Household Finance filed a forcible-detainer action to evict Ruby and Wilburn Yarbrough from the subject property. *Id.* at 278. Household Finance purchased the property at a non-judicial foreclosure sale and obtained a substitute trustee's deed. *Id.* The justice court granted Household Finance possession of the property, and the Yarbroughs appealed to the county court. *Id.* at 278–79. In that proceeding, the Yarbroughs "filed a plea to the jurisdiction and an amended plea alleging that the foreclosure sale was void because the deed of trust was forged and void." *Id.* at 279. With the amended plea, the couple filed an affidavit from Ruby, in which she testified that the deed of trust was not signed by her or her husband. *Id.* The Yarbroughs also filed "a copy of their petition in a Texas district court" against the original mortgagee in which the Yarbroughs "sought damages for wrongful eviction, slander of title, . . . [and] a judgment for title to the property." *Id.* The court held in favor of the Yarbroughs and found that the trial court lacked subject matter jurisdiction. *Id.* at 283.

Steed argues that his case "raises precisely the same question" as *Yarbrough* because the forged agreed judgment creates a title dispute to preclude the trial court's subject matter jurisdiction. However, Steed has not filed any of the documents that were critical to the court's holding in *Yarbrough*. For example, Steed has no concurrent district court actions against HB1 or Champion, and Steed has not filed an affidavit testifying that the agreed judgment contains a forged signature.[4] *See Yarbrough*, 455 S.W.3d at 279; *Yarto v. Gilliland*, 287 S.W.3d 83, 95 (Tex. App.—Corpus Christi–Edinburg 2009, no pet.) ("[W]e find that the Gillilands' claim [that they entered an oral contract with Yarto and fully satisfied the terms of the oral contract], coupled with the Gillilands' pending litigation in the district court, raises a title dispute that removes the justice court's subject-matter jurisdiction over the case.").

Furthermore, the court also analogized the Yarbrough's claims "to those in which the parties disputed the existence of a landlord-tenant relationship." *Id.* at 282. Appellate courts generally find that a trial court has subject matter jurisdiction in a forcible-detainer action when the party asserting possession has established a landlord-tenant or tenant-at-sufferance relationship. *See Rice*, 51 S.W.3d at 711, 712–13 (holding that the trial court had subject matter jurisdiction because appellants did not contest the validity of the deed of trust, which established a tenancy-at-sufferance relationship); *Yarbrough*, 455 S.W.3d at 280 ("When there is no dispute that the parties agreed to a tenancy relationship in the event of foreclosure, the tenancy relationship provides an independent basis for resolving

---

[4] Steed filed a "Motion for Leave to File Documents and Evidence in Support of Appeal" with this Court which included an affidavit alleging that his lawyer signed the agreed judgment without his consent. We denied this motion because it included evidence outside the record and did not consider this affidavit on appeal.

8

the issue of possession." (citing *Rice*, 51 S.W.3d at 712)); *see also Haywood v. No Bull Invs.*, LLC, No. 13-22-00609-CV, 2023 WL 4940543, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 3, 2023, no pet.) (mem. op.) (holding that the trial court lacked subject matter jurisdiction over the forcible-detainer action because appellee failed to provide a deed of trust establishing a landlord-tenant relationship with the appellant and appellant had a concurrent case in federal district court against the original mortgagee); *cf. Ward*, 115 S.W.3d at 271 (holding that the trial court did not have subject matter jurisdiction over the forcible-detainer action because appellees' contract for deed did not establish a landlord-tenant or tenancy-at-sufferance relationship).

The court in *Yarbrough* held that "[b]ecause the Yarbroughs contend the deed of trust and resulting substitute trustee's deed are void due to forgery, they have raised a genuine issue of title so intertwined with the issue of possession as to preclude jurisdiction in the justice court." *Yarbrough*, 455 S.W.3d at 283. Here, HB1 produced the substitute trustee's deed, evidencing HB1 owned the property, and the deed of trust executed between Janet and Champion which explicitly created a tenancy-at-sufferance relationship with Janet and her heirs in the event of foreclosure. In contrast to *Yarbrough*, Steed has not challenged the validity of the deed of trust.

Because HB1 produced a deed of trust establishing a tenant-at-sufferance relationship and Steed does not challenge the validity of that document, we hold that the trial court had subject matter jurisdiction. *See Yarbrough*, 455 S.W.3d at 283; *Rice*, 51 S.W.3d at 711, 712–13; *see also Haywood*, 2023 WL 4940543, at *4; *Diffley*, WL 6790043, at *2; *cf. Ward*, 115 S.W.3d at 271.

9

### III. TEMPORARY RESTRAINING ORDER

By his second issue, Steed argues the trial court erred in granting possession to HB1 because the purported TRO issued in August 2021 was still in effect and voided any effects of the foreclosure sale.

### A. Standard of Review & Applicable Law

A forcible-detainer action is the procedure used to determine "the right to immediate possession of real property." *Yarto*, 287 S.W.3d at 89 (citing *Ward*, 115 S.W.3d at 270). As explained previously, the sole issue in a forcible-detainer action is the right to immediate possession of real property. *Shields Ltd. P'ship*, 526 S.W.3d at 478.

Generally, any defects in the foreclosure process may not be considered in a forcible-detainer action. *See, e.g.*, *Schlichting v. Lehman Bros. Bank FSB*, 346 S.W.3d 196, 199 (Tex. App.—Dallas 2011, pet. dism'd). Because the possessor or defendant can still challenge the foreclosure in an adjudication of title, the plaintiff can establish possession over the subject property "even when 'the possessor questions the validity of a foreclosure sale.'" *Trimble v. Fed. Nat'l Mortg. Ass'n*, 516 S.W.3d 24, 29 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (quoting *Wells Fargo Bank, N.A. v. Ezell*, 410 S.W.3d 919, 921 (Tex. App.—El Paso 2013, no pet.)).

### B. TRO in the Appellate Record

We first address HB1's complaint that the TRO is improperly attached to Steed's brief. The TRO was never admitted as an exhibit, and it is not included in the reporter's record or clerk's record. Steed attached the TRO as an appendix to his appellate brief, but "[i]t is well established that documents attached to an appellate brief which are not

10

part of the record may generally not be considered by the appellate court." *Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.) (collecting cases). The only evidence of the TRO that exists in the record is when Steed quotes from it during trial. Accordingly, the only portion of the TRO we will consider is the language, "[Champion] is hereby immediately enjoined from the date of entry of this order until [fourteen] days after or until further order of this court."

## C.     Analysis

Steed argues that the August 2021 TRO did not expire because there was no "further order" from the district court, and therefore, he is entitled to possession of the property because the foreclosure was void. Essentially, Steed argues that the TRO could not automatically expire after fourteen days and could only be terminated by "further order" of the court. Additionally, he also argues that the agreed judgment that terminated his case against Champion cannot be a "further order" of the court because he had no notice of it and his attorney's signature was forged.

First, from the plain meaning of the quoted language, Steed's interpretation of the TRO's durational language fails. Steed's interpretation would render the fourteen-day time limit meaningless, and the TRO would not be "temporary." Second, Texas Rule of Civil Procedure 687 sets out specific requirements for a writ of injunction and subsection (e) clearly "limits any temporary restraining order to fourteen days." *In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204 (Tex. 2002) (orig. proceeding); *see* TEX. R. CIV. P. 687.

11

Moreover, Steed does not argue that the TRO became a temporary injunction, or that the district court extended the TRO in any way. *See In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204–05 (Tex. 2002) (orig. proceeding) (stating that Rule 680 is "the only method for extending a temporary restraining order beyond fourteen days"); *see also* TEX. R. CIV. P. 680 (providing that a TRO cannot exceed fourteen days unless the court extends it for good cause "within the time so fixed [in] the order" and providing that a TRO may not be extended more than once "unless subsequent extensions are unopposed"). Thus, Steed has failed to show that the TRO issued in August 2021 was still in effect and prevented the property's foreclosure in August 2022.[5]

Lastly, Steed argues in his reply brief that "[a]ppellees acted in bad faith, committed perjury, fraud and fraud upon the courts, but not limited thereto, to steal the property from [Steed]" and thereby violated Texas Constitution Article 16, § 50. *See* TEX. CONST. art. 16, § 50(a) ("Protection of Homestead from Forced or Unauthorized Sale"). Steed insinuates that Champion, who is not a party to this lawsuit, and HB1 both violated the Texas Constitution because the insurance money for the damage sustained in 2017 was never paid out and the property was never repaired.

First, a party may not raise a new issue in a reply brief. *Private Mini Storage Realty, L.P. v. Larry F. Smith, Inc.*, 304 S.W.3d 854, 859 (Tex. App.—Dallas 2010, no pet.) (citations omitted). Regardless, as explained previously, any issue with the foreclosure process should have been brought in a separate action. *See Schlichting*, 346 S.W.3d at 199; *Williams*, 315 S.W.3d at 927; *see also Diffley v. Fed. Nat'l Mortg. Ass'n*, No. 02-13-

---

[5] Given our conclusion that the TRO expired according to its own terms, we need not address Steed's argument that the agreed judgment did not constitute a "further order."

00403-CV, 2014 WL 6790043, at *2 (Tex. App.—Fort Worth Nov. 26, 2014, no pet.) (mem. op.) (holding appellant's allegations of fraud could not "be maintained in a forcible[-]detainer action" and "must be brought in a separate suit").

We overrule Steed's second issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Chief Justice

Delivered and filed on the
18th day of January, 2024.