**Opinion issued May 7, 2024**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-22-00819-CV

—————————————

**MARGARITA ANGELINO TRUJILLO, Appellant**

**V.**

**SHAFAII INVESTMENTS, LTD., Appellee**

---

**On Appeal from the Civil Court at Law No. 3**
**Harris County, Texas**
**Trial Court Case No. 1182578**

---

### MEMORANDUM OPINION ON REHEARING

Appellant Margarita Angelino Trujillo has filed a motion for rehearing of our January 18, 2024 opinion and judgment. We deny the motion for rehearing, withdraw our opinion and judgment of that date, and issue this memorandum opinion and a new judgment in their stead. Our disposition remains the same.

In this forcible detainer action, Angelino challenges the trial court's summary judgment awarding possession of the property at issue to Shafaii Investments, Ltd., the purchaser of the property at a foreclosure sale. We affirm.

## BACKGROUND

Angelino purchased a townhome from Raj Shafaii and signed a real estate lien note and deed of trust to finance the purchase. The deed of trust provides:

> If any of the Property is sold under this Deed of Trust, [Angelino] must immediately surrender possession to the purchaser. If [Angelino] fails to do so, [Angelino] will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

Several years later, Raj Shafaii foreclosed on the property. At the foreclosure sale, Raj Shafaii's company, Shafaii Investments,[1] submitted the highest bid. The substitute trustee's deed, conveying the property to Shafaii Investments, states that the property was sold to Shafaii Investments in consideration of the sum of $31,500 that Shafaii Investments paid to the substitute trustee. However, Shafaii Investments never tendered the foreclosure bid price to the substitute trustee. Instead, Shafaii Investments wrote a check for $31,500 to Raj Shafaii personally, and he deposited the check into his wife's bank account.

After the foreclosure sale, Shafaii Investments filed a forcible detainer action against Angelino in justice court seeking possession of the property. The justice

---

[1] Raj Shafaii is the president and general partner of Shafaii Investments.

2

court granted Shafaii Investments' motion for summary disposition and awarded possession of the property to Shafaii Investments.

Angelino then appealed to the county court at law. The parties tried the case to a jury, and the jury found in favor of Angelino. Shafaii Investments moved for a judgment notwithstanding the verdict, which the trial court granted. The trial court concluded there was legally insufficient evidence to support the jury's finding and that the evidence presented at trial conclusively established that Shafaii Investments was entitled to possession of the property.

On learning the reporter's record of the jury trial was lost, the parties agreed to a new trial, which the trial court granted. Shafaii Investments then moved for summary judgment. The trial court initially denied the motion. However, at the pretrial conference a couple of months later, the trial court reconsidered Shafaii Investments' motion for summary judgment and granted it, awarding Shafaii Investments possession of the property. The trial court also awarded Shafaii Investments its requested attorney's fees. Angelino now appeals from the trial court's summary judgment.

## DISCUSSION

Angelino raises four issues on appeal. First, she argues there is a title dispute depriving the lower courts of jurisdiction to hear Shafaii Investments' forcible detainer action because there was a defect in the foreclosure sale—Shafaii

3

Investments never tendered the foreclosure bid price to the substitute trustee. Alternatively, Angelino argues the trial court erred in granting summary judgment for and awarding attorney's fees to Shafaii Investments for three reasons: (1) Shafaii Investments did not conclusively establish that it owned the property; (2) Shafaii Investments did not conclusively establish that it complied with statutory notice requirements; and (3) Shafaii Investments did not provide sufficient evidence to support the conditional attorney's fee award.

**Forcible Detainer**

Under the Texas Property Code, a tenant who refuses to surrender possession of real property on demand commits a forcible detainer. TEX. PROP. CODE § 24.002(a). The person claiming a superior right of possession may file a forcible detainer action in a justice court to obtain possession of the property. *See id.* § 24.004(a). A forcible detainer action is a "speedy, simple, and inexpensive means to obtain immediate possession of property." *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 919 (Tex. 2013) (quoting *Marshall v. Hous. Auth. of the City of San Antonio*, 198 S.W.3d 782, 787 (Tex. 2006)). The only issue the justice court may decide is the right to actual, immediate possession of the premises. *Id.*; *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.). A justice court has no jurisdiction to decide title to property, nor does a county court reviewing a justice court's forcible

detainer judgment in an appellate capacity. TEX. R. CIV. P. 510.3(e); *Yarbrough*, 455 S.W.3d at 280; *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.). A forcible detainer action is cumulative of any other remedy a party may have. *Rice*, 51 S.W.3d at 709. Thus, a party may bring a separate suit in district court to determine any title issues, and this suit may be prosecuted concurrently with the forcible detainer action in justice court. *Id.*

To prevail in a forcible detainer action, the plaintiff must show a superior right to immediate possession of the property. To establish a superior right to immediate possession, a plaintiff must prove: (1) the plaintiff owns the property; (2) the defendant is either a tenant at will, tenant at sufferance, or a tenant or subtenant willfully holding over after the termination of the tenant's right of possession; (3) the plaintiff gave proper notice to the defendant to vacate the property; and (4) the defendant refused to vacate the property. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 478 (Tex. 2017).

A landlord–tenant relationship is a necessary element in a forcible detainer action. *Yarbrough*, 455 S.W.3d at 280. Often, a deed of trust will state that on foreclosure of the property, a tenancy at sufferance is created. *See id.* Tenancy at sufferance clauses separate the issue of possession from the issue of title. *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 564 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

5

When a deed of trust creates a tenancy in the event of foreclosure, the landlord–tenant relationship provides a basis for deciding the possession issue, regardless of any title issues or alleged defects in the foreclosure process and even though the substitute trustee's deed following the foreclosure sale can later be set aside for wrongful foreclosure. *Gardocki v. Fed. Nat'l Mortg. Ass'n*, No. 14-12-00921-CV, 2013 WL 6568765, at *3 (Tex. App.—Houston [14th Dist.] Dec. 12, 2013, no pet.) (mem. op.); *see also Yarbrough*, 455 S.W.3d at 282; *Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, pet. denied). Defects in the foreclosure process cannot be considered in a forcible detainer action but may be pursued in a separate suit for wrongful foreclosure or to set aside the substitute trustee's deed. *Lua v. Cap. Plus Fin., LLC*, 646 S.W.3d 622, 629–30 (Tex. App.—Dallas 2022, pet. denied).

The purchaser at the foreclosure sale generally may establish a superior right to immediate possession by providing the deed of trust creating the tenancy at sufferance, the substitute trustee's deed, and proof of proper notice to vacate the property. *See Williams v. Bank of N.Y. Mellon*, 315 S.W.3d 925, 927 (Tex. App.—Dallas 2010, no pet.).

## Jurisdiction

Angelino first argues a genuine title issue exists that deprives the lower courts of jurisdiction in this forcible detainer action because the substitute trustee's deed is

void, meaning it conveys no interest and leaves Angelino as the owner of the property.

*Applicable Law*

A justice court has no jurisdiction to decide title to property, nor does a county court reviewing a justice court's forcible-detainer judgment in an appellate capacity. TEX. R. CIV. P. 510.3(e); *Yarbrough*, 455 S.W.3d at 280; *Rice*, 51 S.W.3d at 709.

Thus, when a forcible detainer action presents a "genuine issue of title so intertwined with the issue of possession" that the justice court cannot award possession without first deciding the title issue, then the justice court lacks jurisdiction to decide either issue. *Yarbrough*, 455 S.W.3d at 280; *see also Pinnacle Premier Props.*, 447 S.W.3d at 563; *Mitchell v. Armstrong Cap. Corp.*, 911 S.W.2d 169, 171 (Tex. App.—Houston [1st Dist.] 1995, writ denied). But the mere existence of a title dispute does not deprive the justice court of jurisdiction; a justice court lacks jurisdiction "only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession." *Yarbrough*, 455 S.W.3d at 280 (quoting *Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.)).

Although a genuine issue of title intertwined with a possession issue deprives a justice court of jurisdiction, defects in the foreclosure process do not. *Lua*, 646 S.W.3d at 630 n.3 ("Challenges to the validity of a foreclosure sale do not deprive

7

the justice court or county court of jurisdiction."); *Onabajo v. Household Fin. Corp. III*, No. 03-15-00251-CV, 2016 WL 3917140, at *2 (Tex. App.—Austin July 14, 2016, no pet.) (mem. op.) ("Defects in the foreclosure process cannot be used . . . to raise a question of title depriving the justice or county courts of jurisdiction to resolve the question of immediate possession."); *see, e.g.*, *Pinnacle Premier Props.*, 447 S.W.3d at 564–65 (holding defendant's claim that foreclosure sale was conducted improperly did not deprive lower courts of jurisdiction); *Gardocki*, 2013 WL 6568765, at *4 (holding defendant's claim that plaintiff did not comply with foreclosure clause in deed of trust and thus failed to create tenancy at sufferance did not deprive lower courts of jurisdiction); *Dormady v. Dinero Land & Cattle Co., L.C.*, 61 S.W.3d 555, 558–59 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.) (holding defendant's claim that trustee did not comply with terms of deed of trust when posting property for foreclosure did not deprive lower courts of jurisdiction). A defendant in a forcible detainer action may raise these defects in a separate suit for wrongful foreclosure or to set aside the trustee's deed, but they are not relevant in a forcible detainer action. *Lua*, 646 S.W.3d at 630.

Because tenancy at sufferance clauses separate the issue of possession from the issue of title, *Pinnacle Premier Props.*, 447 S.W.3d at 564, a forcible detainer action may proceed based on a tenancy at sufferance clause in a deed of trust, regardless of whether the plaintiff in the action complied with the terms of the deed

of trust in the foreclosure process. *E.g.*, *Gardocki*, 2013 WL 6568765, at *4 ("Courts of appeals have consistently allowed forcible detainer actions to proceed based on a tenancy at sufferance clause in a deed of trust without regard to whether the party seeking possession complied with the terms of the deed of trust."). The validity of the foreclosure process must be resolved by a district court in a separate suit, independent of the forcible detainer action. *Id.* (defendant's challenge to validity of foreclosure could be litigated in district court separately from possession issue in justice or county court); *Guillen v. U.S. Bank, N.A.*, 494 S.W.3d 861, 868 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (explaining that any question of foreclosure's validity must be resolved in district court independent of outcome of possession issue). A justice court need not determine whether a foreclosure was valid before awarding possession. *Elwell v. Countrywide Home Loans, Inc.*, 267 S.W.3d 566, 569 (Tex. App.—Dallas 2008, pet. dism'd w.o.j.).

Subject matter jurisdiction is a question of law that we review de novo. *Yarbrough*, 455 S.W.3d at 279.

### *Analysis*

Here, Angelino argues there was a defect in the foreclosure sale—she claims the foreclosure sale did not comply with the terms of the deed of trust because Shafaii Investments never tendered the foreclosure bid price to the substitute trustee, rendering the substitute trustee's deed void. The deed of trust, she explains,

9

authorizes the substitute trustee to sell the property to the highest bidder for cash on foreclosure. But Shafaii Investments did not pay the substitute trustee; instead, Shafaii Investments wrote a check to Raj Shafaii personally. Thus, she argues, Shafaii Investments did not buy the property, and the substitute trustee's deed is void. She asserts the void substitute trustee's deed raises a title dispute so intertwined with the issue of possession as to deprive the lower courts of jurisdiction.

Angelino is essentially arguing there was a defect in the foreclosure sale. It is well settled that defects in the foreclosure process do not affect a justice court's jurisdiction over a forcible detainer action. *See Lua*, 646 S.W.3d at 630 n.3; *Onabajo*, 2016 WL 3917140, at *2; *Pinnacle Premier Props.*, 447 S.W.3d at 564–65; *Gardocki*, 2013 WL 6568765, at *4; *Dormady*, 61 S.W.3d at 558–59. These types of defects are not relevant in a forcible detainer action and can only be resolved by a district court in a wrongful foreclosure action. *See Lua*, 646 S.W.3d at 630 & n.3; *Gardocki*, 2013 WL 6568765, at *4; *Guillen*, 494 S.W.3d at 868.

Angelino argues that the substitute trustee's deed is void, but she has not disputed the validity of the deed of trust. When there is no dispute as to the validity of a deed of trust containing a tenancy at sufferance provision, the tenancy provides a basis for resolving the possession issue, regardless of any title dispute. *Gardocki*, 2013 WL 6568765, at *3; *Yarbrough*, 455 S.W.3d at 282. In cases in which the court concludes a title issue is intertwined with the possession issue, either: (1) the

10

defendant challenges the validity of the deed of trust establishing the tenancy relationship; or (2) there is no tenancy at sufferance provision. *E.g.*, *Yarbrough*, 455 S.W.3d at 283 (concluding title issue intertwined with possession issue when defendants claimed deed of trust was void due to forgery); *Chinyere v. Wells Fargo Bank, N.A.*, 440 S.W.3d 80, 85 (Tex. App.—Houston [1st Dist.] 2012, no pet.) (concluding title issue intertwined with possession issue when neither deed of trust nor substitute trustee's deed contained language creating landlord–tenant relationship). Neither of these circumstances are present in this case.

Although Angelino has raised a title dispute, the mere existence of a title dispute does not deprive the lower courts of jurisdiction. *Yarbrough*, 455 S.W.3d at 280. The dispute here is based on a defect in the foreclosure proceeding, which is not so intertwined with the issue of possession as to deprive the lower courts of jurisdiction. Thus, the justice court and county court had jurisdiction to decide this forcible detainer action.

We overrule Angelino's first issue.

**Ownership of the Property**

Next, Angelino argues the trial court erred in granting summary judgment because Shafaii Investments failed to conclusively establish the ownership element of its forcible detainer action. Like her jurisdictional argument, Angelino also bases this argument on the fact that Shafaii Investments never tendered the foreclosure bid

11

price to the substitute trustee. Angelino argues that Shafaii Investments did not actually buy the property at the foreclosure sale, so the substitute trustee's deed is void and does not establish that Shafaii Investments owns the property.

### *Applicable Law*

A plaintiff must establish the plaintiff owns the property to prevail in a forcible detainer action. *Shields*, 526 S.W.3d at 478. But the plaintiff does not need to prove title, only "sufficient evidence of ownership to demonstrate a superior right to immediate possession." *Rice*, 51 S.W.3d at 709; *see also Kaldis v. Aurora Loan Servs.*, No. 01-09-00270-CV, 2010 WL 2545614, at *3 (Tex. App.—Houston [1st Dist.] June 24, 2010, pet. dism'd w.o.j.) (mem. op.). A plaintiff can prove this superior right to immediate possession with a substitute trustee's deed following a foreclosure sale. *Kaldis*, 2010 WL 2545614, at *3. The substitute trustee's deed is sufficient to establish the superior right of possession, even if the opposing party claims there were defects in the foreclosure proceeding and challenges the substitute trustee's deed. *Id.*; *e.g.*, *Dormady*, 61 S.W.3d at 558–59 (holding purchaser of property at foreclosure sale had superior right of possession despite tenant's claim that trustee's deed was void because of foreclosure defects).

We review summary judgments de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). A party moving for traditional summary judgment, as here, must prove that there is no genuine issue of material fact and that the movant is entitled

to judgment as a matter of law. *Id.*; TEX. R. CIV. P. 166a(c). If the movant does so, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take as true all evidence favoring the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.*

### *Analysis*

Angelino argues Shafaii Investments failed to establish ownership because Shafaii Investments did not tender the foreclosure bid price to the substitute trustee, so it did not buy the property at the foreclosure sale and the substitute trustee's deed is void.

However, Angelino again is essentially arguing a defect in the foreclosure process. In a forcible detainer action, a substitute trustee's deed is sufficient to establish a superior right of possession, even if there were defects in the foreclosure process. *Kaldis*, 2010 WL 2545614, at *3; *see also Dormady*, 61 S.W.3d at 558–59. Angelino does not dispute that Shafaii Investments offered as summary judgment evidence a substitute trustee's deed that, on its face, establishes Shafaii Investments purchased the property at the foreclosure sale. Whether defects in the foreclosure process voided the substitute trustee's deed is an issue to be resolved in an action for wrongful foreclosure or to set aside the substitute trustee's deed, not a forcible detainer action. *See Lua*, 646 S.W.3d at 630.

13

Angelino similarly argues that there is a genuine issue of material fact as to whether the property was sold at the foreclosure sale, and the tenancy at sufferance provision in her deed of trust only takes effect when the property is sold. Again, these alleged defects in the foreclosure process must be resolved in an action for wrongful foreclosure or to set aside the substitute trustee's deed, not a forcible detainer action. *See id.*

Shafaii Investments provided the substitute trustee's deed demonstrating it had a superior right to immediate possession of the property. *See Kaldis*, 2010 WL 2545614, at *3; *Rice*, 51 S.W.3d at 709. Therefore, Shafaii Investments conclusively proved the ownership element of its forcible detainer action.

We overrule Angelino's second issue.

## Proper Notice

Angelino next argues the trial court erred in granting summary judgment because Shafaii Investments failed to conclusively establish that it provided the notice required by Section 24.005 of the Property Code.

### *Applicable Law*

A landlord must establish it provided proper statutory notice to prevail in a forcible detainer action. *Shields*, 526 S.W.3d at 478; *Gore v. Homecomings Fin. Network, Inc.*, No. 05-06-01701-CV, 2008 WL 256830, at *2 (Tex. App.—Dallas Jan. 31, 2008, no pet.) (mem. op.). Forcible detainer is a statutory cause of action,

14

so a landlord must strictly comply with all statutory requirements. *Mendoza v. Bazan*, 574 S.W.3d 594, 607 (Tex. App.—El Paso 2019, pet. denied); *Kennedy v. Andover Place Apartments*, 203 S.W.3d 495, 497 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

The Property Code requires a landlord to give a tenant under a written lease at least three days' written notice to vacate the premises before filing a forcible detainer action, unless the parties have contracted for a different notice period. TEX. PROP. CODE § 24.005(a). The landlord must give the notice to vacate in person or by mail at the property in question. *Id.* § 24.005(f). The landlord can send the notice to vacate by regular mail, by registered mail, or by certified mail, return receipt requested, to the property in question. *Id.*

Typically, a landlord proves it mailed a notice to vacate with a business records affidavit of the entity that sent the notice—often the landlord's counsel—stating the notice to vacate was mailed by regular mail and certified mail, along with copies of the written notice and the envelopes showing the proper address and postage. *See, e.g.*, *Perez v. Fed. Home Loan Mortg. Corp.*, No. 08-14-00249-CV, 2016 WL 4538528, at *4 (Tex. App.—El Paso Aug. 31, 2016, no pet.) (mem. op.) (concluding landlord sufficiently proved it mailed notice to vacate with counsel's business records affidavit that stated notice was mailed by both certified and first

15

class mail and included copies of notice letter along with first class and certified mail envelopes showing proper address and prepaid postage).

Further, the affidavit should note whether either of the notices were returned as undelivered. *See id.* (concluding landlord sufficiently proved notice in part because business records affidavit averred properly addressed first class mail envelope was not returned); *Farkas v. Fed. Nat'l Mortg. Ass'n*, No. 05-11-01416-CV, 2012 WL 5351262, at *3 (Tex. App.—Dallas Oct. 31, 2012, no pet.) (mem. op.) (concluding landlord sufficiently proved notice when custodian of records for landlord's counsel testified that he sent notice by certified mail and regular mail, that it was standard practice to add returned letters to appropriate file, that if first-class mail had been returned he would have found evidence of that in appropriate file, and that there was no evidence in file that first-class mail had been returned); *cf. Rose v. Pierre*, No. 01-22-00418-CV, 2023 WL 3357658, at *4–5 (Tex. App.—Houston [1st Dist.] May 11, 2023, no pet.) (mem. op.) (concluding landlord did not prove notice when there was no copy of written notice in evidence or any evidence that notice was delivered in person or by mail); *Gore*, 2008 WL 256830, at *2 (concluding landlord did not prove notice by mail when first-class mail envelope was labeled "return to sender" and certified mail receipts showed sections for date of delivery, signature, and printed name of receiving party were blank).

16

Again, we review summary judgments de novo. *Lujan*, 555 S.W.3d at 84. A party moving for traditional summary judgment, as here, must prove that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Id.*; TEX. R. CIV. P. 166a(c). If the movant does so, the burden shifts to the nonmovant to raise a genuine issue of material fact. *Lujan*, 555 S.W.3d at 84. We take as true all evidence favoring the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.*

*Analysis*

Angelino argues that Shafaii Investments failed to conclusively establish it provided notice as required by Section 24.005 of the Property Code because: (1) Raj Shafaii's business records affidavit lacked personal knowledge and thus was insufficient; and (2) Shafaii Investments did not prove it mailed the notice to vacate.

Angelino argues Raj Shafaii's business records affidavit lacked personal knowledge and thus the trial court erred in overruling her objection to the affidavit. His affidavit stated he was a custodian of the business records of Shafaii Investments and that on January 11, 2022, Shafaii Investments through its attorneys mailed a notice to vacate to Angelino. The affidavit further stated the notice was mailed by regular mail and certified mail, return receipt requested. A copy of the notice was attached to the affidavit. Angelino argues the affidavit is not based on Raj Shafaii's personal knowledge because he did not personally mail the notice, and the affidavit

17

does not explain how he supposedly obtained personal knowledge of his attorneys' mailing of the notice. But Texas Rule of Evidence 803(6), the business record exception to the hearsay rule, does not require that the witness laying the predicate for admission of a document be the creator of the document or even an employee of the same company as the creator. *See* TEX. R. EVID. 803(6); *Rizvi v. Am. Express Nat'l Bank*, No. 02-19-00197-CV, 2020 WL 3969585, at \*8 (Tex. App.—Fort Worth June 18, 2020, no pet.) (mem. op.). Nor does the rule require that the witness have personal knowledge of the information recorded in the document. *Rizvi*, 2020 WL 3969585, at \*8 (explaining that records custodian need only have personal knowledge of manner in which records were kept).

Even without considering Raj Shafaii's affidavit, there is conclusive evidence in the appellate record that Shafaii Investments mailed notice to Angelino and that Angelino received it. But the parties dispute whether we may properly consider this evidence. Shafaii Investments refers us to a certified mail receipt with Angelino's name, dated January 11, 2022, and a return receipt or "green card" listing Angelino's address and bearing a signature that reads "Margarita Trujillo." These receipts are attached to a copy of the notice to vacate, also dated January 11, 2022, and authenticated by the business records affidavit of Shafaii Investments' attorney at the time.

18

Shafaii Investments did not attach the receipts to its motion for summary judgment, instead relying on Raj Shafaii's affidavit stating his attorneys mailed the notice. The trial court initially denied Shafaii Investments' motion for summary judgment.

Then, on July 14, 2022, Shafaii Investments filed three exhibits for preadmission that it intended to introduce at trial. More than two months later, the trial court held a pretrial hearing. The parties both announced ready for trial, and Shafaii Investments asked that the three exhibits it had previously filed, including the receipts, be preadmitted. The trial court asked Angelino if she had any objections; she did not indicate that she had any. The trial court then admitted the exhibits, including the receipts.

Later, during the same pretrial hearing, the trial court reconsidered its ruling on Shafaii Investments' motion for summary judgment. The trial court expressed doubt that there were any triable fact issues in the case. Shafaii Investments agreed there were none. When the trial court asked Angelino what the triable fact issues were, she said Shafaii Investments' standing to bring suit, but the trial court disagreed that was an issue in this case. Angelino did not mention any dispute about whether Shafaii Investments mailed, or she received, the notice. The trial court then granted Shafaii Investments' motion for summary judgment. In its written order granting summary judgment, the trial court recited: "[T]he Court finds that the

evidence presented conclusively established that Shafaii Investments, Ltd. is entitled to immediate possession of the subject property . . . ."

Now, on appeal, Shafaii Investments argues the receipts clearly show that Angelino received the notice to vacate. Angelino argues, however, that the receipts were not attached to or referenced in Shafaii Investments' motion for summary judgment, and therefore this evidence is not part of the summary judgment record. She argues that unless the appellate record indicates the trial court considered evidence outside the summary judgment record, we may not consider the evidence on appeal. We disagree with Angelino's argument that we may not consider the receipts on appeal for two reasons.

First, the appellate record indicates the trial court did consider this evidence. The receipts are akin to late-filed summary judgment evidence. When a party files evidence after the deadline prescribed by Texas Rule of Civil Procedure 166a(c),[2] we presume the trial court did not consider the evidence without an affirmative indication in the record, but a trial court's recital that it considered the evidence

---

[2] That rule provides:

> Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing. Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response.

TEX. R. CIV. P. 166a(c).

presented, without any limitation, *is* an affirmative indication the trial court considered the late-filed evidence. *See B.C. v. Steak N Shake Operations, Inc.*, 598 S.W.3d 256, 260–62 (Tex. 2020) (per curiam). There is no dispute here that the receipts were presented to the trial court, and the trial court admitted them without objection at the same pretrial hearing during which it considered the motion for summary judgment. In its order, the trial court recited that the evidence presented conclusively established Shafaii Investments was entitled to immediate possession of the property. The record thus establishes the trial court considered the evidence, including the receipts, and we may thus consider the receipts on appeal.

Second, the facts of this case are similar to those in *Balmorhea Ranches, Inc. v. Heymann*, 656 S.W.3d 441 (Tex. App.—El Paso 2022, no pet.). In that case, after both parties filed motions for summary judgment and before the trial court ruled, the parties filed joint stipulations. *Id.* at 446. "[T]he trial court allowed [the] filing of stipulations and no objection was raised or soon followed." *Id.* The trial court later granted one of the summary judgment motions, stating that it considered the joint stipulations along with the pleadings, responses, and arguments of counsel. *Id.* at 445–46. The appellant argued that no party asked the court to consider the stipulations as part of its summary judgment ruling or incorporated them by reference into the summary judgment record, and thus the trial court erred in considering this evidence that was outside the summary judgment record. *Id.* at 446.

The appellate court disagreed and concluded there was no error. *Id.* at 446–47. Stipulations, by definition, let the trial court know what is not in dispute and where there is "no genuine issue." *Id.* (quoting TEX. R. CIV. P. 166a(c)).

Similarly, in this case, Shafaii Investments submitted evidence after filing a motion for summary judgment but before the trial court ruled on the motion, and Angelino did not raise any objection or indicate the evidence was disputed. The trial court later granted Shafaii Investments' motion for summary judgment and stated it considered the evidence presented. As in *Balmorhea Ranches*, the trial court did not err in relying on this evidence. *See id.* at 447.

Although Shafaii Investments submitted the evidence after filing its motion for summary judgment, the trial court admitted the evidence, including the receipts, at the same pretrial hearing during which the trial court later considered and ruled on the motion. After the trial court admitted the receipts, and after Angelino indicated the only triable issue was the issue of standing, the trial court granted the summary judgment motion. On this record, we conclude that the evidence was properly before the trial court when it ruled on the motion for summary judgment and that the court did not err in concluding there was no issue of material fact precluding summary judgment. The receipts, which were properly before the trial court, conclusively established Shafaii Investments mailed, and Angelino received, the notice to vacate.

Relying on the Black's Law Dictionary definition of "mail,"[3] Angelino next argues Shafaii Investments provided no conclusive evidence that the notice to vacate was delivered in a properly addressed envelope, stamped with proper postage, or deposited in a proper place for the receipt of mail.

Shafaii Investments did not provide copies of the envelopes it used to mail the notice showing the proper address and postage or evidence that the mail was not returned undelivered, which are ordinarily used to establish mailing. *See, e.g.*, *Perez*, 2016 WL 4538528, at *4; *Farkas*, 2012 WL 5351262, at *3. But the certified mail receipt and return receipt are conclusive evidence that Shafaii Investments mailed notice to Angelino's address and that she received the notice. *See* TEX. PROP. CODE § 24.005(f) (landlord may send notice to vacate by certified mail, return receipt requested, to property in question); *see also U.S. Bank, Nat'l Ass'n v. Khan*, No. 05-14-00903-CV, 2015 WL 4736839, at *2 (Tex. App.—Dallas Aug. 11, 2015, no pet.) (mem. op.) (return receipt confirmations established landlord sent notice by mail to property and therefore complied with Section 24.005). Angelino offered no evidence to the contrary. Therefore, Shafaii Investments conclusively proved that it strictly complied with the Property Code's notice requirements.

---

[3]     Black's Law Dictionary defines the verb "mail" as "[t]o deposit (a letter, package, etc.) with the U.S. Postal Service; to ensure that a letter, package, etc. is properly addressed, stamped, and placed into a receptacle for mail pickup." *Mail*, BLACK'S LAW DICTIONARY (11th ed. 2019).

In her motion for rehearing, Angelino argues for the first time that Shafaii Investments' evidence creates a genuine issue of material fact precluding summary judgment. She points to two different versions of Shafaii Investments' notice to vacate and argues that both cannot be "a true and correct copy of the notice to vacate that was allegedly mailed." She also argues that the signature on the return receipt does not match her signature on one of the court documents she signed. However, Angelino did not raise these factual issues in the trial court in either her summary-judgment response or at the summary-judgment hearing, and therefore she has waived these issues on appeal. *See* TEX. R. CIV. P. 166a(c); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (holding summary-judgment nonmovant could not raise for first time on appeal additional fact issue that was not raised in its response); *Fred Loya Ins. Agency, Inc. v. Cohen*, 446 S.W.3d 913, 925 (Tex. App.—El Paso 2014, pet. denied) (same).

We overrule Angelino's third issue.

### Attorney's Fees

Lastly, Angelino argues the trial court erred in awarding conditional appellate attorney's fees to Shafaii Investments on summary judgment for two reasons: (1) Shafaii Investments did not establish Angelino received the statutorily required notice, which is a prerequisite to recovering attorney's fees; and (2) Shafaii

Investments did not provide sufficient evidence of the reasonable amount to be awarded.

In a letter brief to this court, Angelino also argues that Shafaii Investments did not address this argument in its appellate brief, except for a single conclusory statement, and therefore Shafaii Investments has waived any arguments on this issue. But an appellee who prevails in the trial court does not need to raise arguments in support of the trial court's judgment in its appellate brief and does not waive an issue by failing to do so. *In re G.X.H.*, 627 S.W.3d 288, 295 (Tex. 2021). The Texas Rules of Appellate Procedure do not require an appellee to file a brief at all. In the event the appellee does not file a brief, or does not substantively address an issue in its brief, we are still obligated to independently examine the merits of the appellant's arguments. *See Burns v. Rochon*, 190 S.W.3d 263, 267 n.1 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (explaining court would independently review appellant's claims after appellee's brief had been struck).

### *Applicable Law*

A landlord who prevails in a forcible detainer action and who provides written notice in accordance with Section 24.006(a) of the Property Code is entitled to recover reasonable attorney's fees from the tenant. TEX. PROP. CODE § 24.006(b). Section 24.006(a) requires a landlord, at least 10 days before filing suit, to give a tenant a written demand to vacate the property by registered mail or by certified

25

mail, return receipt requested. *Id.* § 24.005(a). The demand must state that "if the tenant does not vacate the premises before the 11th day after the date of receipt of the notice and if the landlord files suit, the landlord may recover attorney's fees." *Id.* Again, because forcible detainer is a statutory cause of action, a landlord must strictly comply with all statutory requirements. *Mendoza*, 574 S.W.3d at 607; *Kennedy*, 203 S.W.3d at 497. Failure to strictly comply with statutory requirements "is fatal" to a claim for attorney's fees. *See Heimlich v. Cook*, No. 14-22-00358-CV, 2023 WL 3596264, at *5 (Tex. App.—Houston [14th Dist.] May 23, 2023, no pet.) (mem. op.).

A trial court may award conditional appellate attorney's fees to a party. These are "essentially an award of fees that have not yet been incurred and that the party is not entitled to recover unless and until the appeal is resolved in that party's favor." *Ventling v. Johnson*, 466 S.W.3d 143, 156 (Tex. 2015). And while the Supreme Court strongly favors the lodestar method for shifting attorney's fees,[4] that method does not work for conditional appellate attorney's fees that have not yet been

---

[4] The lodestar method "is a focused and objective analysis of whether the [attorney's] fees sought are reasonable and necessary." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 496 (Tex. 2019). Under the lodestar method, a fee claimant bears the burden of providing sufficient evidence of "(1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person performing such services." *Id.* at 498.

incurred and can only be projected based on an expert's opinion testimony. *Yowell v. Granite Operating Co.* (*Yowell II*), 620 S.W.3d 335, 355 (Tex. 2020). When a trial court awards attorney's fees, "any appeal is still hypothetical." *Id.* "There is no certainty regarding who will represent the appellee in the appellate courts, what counsel's hourly rate(s) will be, or what services will be necessary to ensure appropriate representation in light of the issues the appellant chooses to raise." *Id.* The party seeking conditional appellate attorney's fees must still support the fee award with expert testimony "about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services." *Id.*

In all summary judgment cases, to recover attorney's fees, a party moving for summary judgment must plead the request for attorney's fees and include the request and evidence to support the request in the motion for summary judgment, usually with an affidavit from the movant's attorney. *Vertical Holdings, LLC v. LocatorX, Inc.*, No. 05-22-00720-CV, 2023 WL 5949023, at *5–6 (Tex. App.—Dallas Sept. 13, 2023, pet. denied) (mem. op.). "The affidavit acts as 'expert testimony' to support the reasonableness of the requested attorney fees." *Id.*

We may not uphold a trial court's award of attorney's fees unless the record contains sufficient evidence to support the award. *See Yowell II*, 620 S.W.3d at 354. "The party seeking attorney's fees bears the burden of proof" to support the trial

27

court's award. *Id.* If the evidence supporting the award is insufficient, we must reverse. *Id.*

### *Analysis*

Angelino argues that Shafaii Investments failed to prove Angelino received notice. However, as discussed above, the certified mail receipt and return receipt, with Angelino's correct address and signature, establish that Shafaii Investments mailed the notice and that Angelino received it. The date on the certified mail receipt matches the date on the notice. The notice states, "Notice under Sec. 24.006(a), Tex. Prop. Code. If you do not vacate the premises before the 11th day after the date of receipt of this notice to vacate and if the landlord (Shafaii) files suit, the landlord may recover attorney's fees." Therefore, Shafaii Investments provided conclusive evidence that it mailed by certified mail and Angelino received a written demand to vacate the property with the required statutory language. *See* TEX. PROP. CODE § 24.006(a), (b).

Angelino also argues that Shafaii Investments did not provide sufficient evidence to support the amount of conditional appellate attorney's fees it sought for four reasons. We address each reason in turn and conclude that Shafaii Investments provided sufficient evidence to support the trial court's award of conditional appellate attorney's fees.

First, Angelino argues the attorney's fee affidavit submitted by Shafaii Investments' attorney does not provide the evidence required under the lodestar method: evidence of which tasks would be required for an appeal, the number of hours required to perform those tasks, or who would be performing those tasks. However, a movant is not required to provide the evidence for a conditional award that it would typically be required to provide under the lodestar method for an award of fees already incurred. *See Yowell II*, 620 S.W.3d at 355. The lodestar analysis does not apply to an award of conditional appellate attorney's fees. *See id.*; *QJD Peking Duck Rest., Inc. v. TCP Spectrum Partners, Ltd.*, No. 01-22-00545-CV, 2023 WL 5436907, at *3 (Tex. App.—Houston [1st Dist.] Aug. 24, 2023, no pet.) (mem. op.). Thus, the lack of evidence under the lodestar method here does not affect the award of conditional appellate attorney's fees.

Second, Angelino argues the attorney's fee affidavit does not describe the specific services that would be necessary to defend an appeal. *See Yowell II*, 620 S.W.3d at 355 (explaining that party seeking to recover contingent appellate fees must provide "opinion testimony about the services it reasonably believes will be necessary to defend the appeal and a reasonable hourly rate for those services").

Shafaii Investments' attorney's fee affidavit describes the testifying attorney's experience and "familiar[ity] with the fees customarily charged by attorneys in Harris County for handling suits on similar claims and . . . familiar[ity] with the

29

attorney's services normally required for the proper prosecution of lawsuits like this one." The affidavit then states, in relevant part:

> If the summary judgment is granted, becomes final, and is then appealed, in my opinion, taking into consideration the complexity of this case, the legal questions involved, and the time involved, a reasonable attorneys' fee for an appeal to the court of appeals would be $5,000.00. If a petition for review is filed in the Texas Supreme Court, in my opinion, a reasonable additional attorneys' fee would be $2,500.00. If the Texas Supreme Court grants the petition for review, in my opinion, a reasonable additional attorneys' fee could be $3,500.00. My hourly rate is $480.00 and [my co-counsel's] hourly rate is $330.00.

This affidavit separates the amounts necessary for an appeal to the intermediate court of appeals and to the Supreme Court and states the attorneys' rates for their services. Although some attorney's fee affidavits identify particular services involved in an appeal, all appeals involve researching, preparing, and drafting a brief, so remanding this case for a more specific description of particular services would provide little if any benefit. *See QJD Peking Duck Rest.*, 2023 WL 5436907, at *4 (affirming appellate attorney's fee award based on attorney's opinion of reasonable fee for "researching, preparing, and drafting a brief" to intermediate appeals court and Supreme Court as well as attorney's hourly billing rate). Further, unlike the lodestar method, the standard described in *Yowell* for conditional appellate attorney's fees does not require an attorney's testimony to describe the number of hours required to perform particular services or the identity of the attorney performing the particular services.

The attorney's fee affidavit Shafaii Investments offered in this case is at least as specific as the testimony the Supreme Court affirmed in *Yowell*.[5] *See Yowell II*, 620 S.W.3d at 356 (affirming court of appeals' judgment on issue of attorney's fees, which in turn affirmed trial court's judgment, because there was legally sufficient evidence to support award). In *Yowell*, the intermediate appeals court explained that the attorney seeking fees testified "concerning his experience handling this type of litigation and his familiarity with reasonable fees charged in the Texas Panhandle by attorneys of varying degrees of experience." *Yowell v. Granite Operating Co.* (*Yowell I*), 557 S.W.3d 794, 808 (Tex. App.—Amarillo 2018), *aff'd in part, rev'd in part*, *Yowell II*, 620 S.W.3d at 356. He then provided testimony on each of the lodestar factors for "the total hours spent on the case so far." *Id.* For conditional appellate attorney's fees, he testified that:

> in his opinion, $22,000 would be a reasonable fee for handling the case through an appeal to this Court; $7,500 would be a reasonable fee for

---

[5] Shafaii Investments made this argument for the first time in its response, which we requested, to Angelino's motion for rehearing. Angelino argued that Shafaii Investments waived this argument by raising it for the first time in a motion for rehearing. However, there is a distinction between arguments and issues. A party may not raise a new *issue* in a motion for rehearing, but a party may raise additional *arguments* in support of its position. *See Chen v. Razberi Techs., Inc.*, 645 S.W.3d 773, 778 n.23 (Tex. 2022) ("New arguments subsumed within the issues argued below can be raised for the first time in a motion for rehearing."); *Greene v. Farmers Ins. Exch.*, 446 S.W.3d 761, 764 n.4 (Tex. 2014) ("We do not consider *issues* that were not raised in the courts below, but parties are free to construct new *arguments* in support of issues properly before the Court."). Shafaii Investments did not raise the issue of appellate attorney's fees; it simply constructed a new argument in response to Angelino's issue. We therefore disagree with Angelino that Shafaii Investments waived our consideration of this argument.

> handling a petition for review to the Supreme Court; $9,000 would be a reasonable fee for briefing on the merits; and $5,000 would be a reasonable fee for representation through oral argument and completion of proceedings in the Supreme Court.

*Id.* The trial court awarded the full amount of conditional appellate attorney's fees sought, and the Amarillo Court of Appeals affirmed this award. *Id.* at 809. The appeals court noted that the opposing party "did not cross-examine the witness regarding his estimates for attorneys' fees on appeal, present any additional evidence on the issue of appellate attorneys' fees, or otherwise contest his testimony on what a reasonable fee would be in the appeal of this case." *Id.* at 808.

The Texas Supreme Court then "independently reviewed the record" and concluded the "uncontroverted evidence" regarding attorney's fees was sufficient, and the Court affirmed the court of appeals' judgment on the issue of attorney's fees. *Yowell II*, 620 S.W.3d at 355–56.

Therefore, if the evidence supporting conditional appellate attorney's fees in *Yowell* was sufficient, the uncontroverted evidence offered in this case is likewise sufficient to support the fee award. *See id.*; *see also State & Cnty. Mut. Fire Ins. Co. v. Walker*, 228 S.W.3d 404, 408–10 (Tex. App.—Fort Worth 2007, no pet.) (cited favorably by Texas Supreme Court in *Yowell* and holding attorney's uncontroverted testimony as to what he believed "a reasonable attorney's fee would be for the services that would 'necessarily need to be rendered' in the event of an appeal" was sufficient evidence to support appellate attorney's fee award). In claiming otherwise,

Angelino argues that more evidence is required than what the Supreme Court actually required in *Yowell*.

Third, Angelino argues Shafaii Investments' attorney's fee affidavit is conclusory and therefore not readily controvertible. But for the reasons discussed above, the attorney's fee affidavit provides sufficient detail about the rate and fees reasonably necessary for an appeal. Angelino could have presented, but did not present, controverting evidence. *See Yowell I*, 557 S.W.3d at 808 (affirming conditional attorney's fee award in part because opposing party "did not cross-examine the witness regarding his estimates for attorneys' fees on appeal, present any additional evidence on the issue of appellate attorneys' fees, or otherwise contest his testimony on what a reasonable fee would be in the appeal of this case").

Fourth, and lastly, Angelino argues that binding precedent from this court requires a finding that the attorney's fee affidavit is insufficient to support the award of attorney's fees, citing *Walsh v. Gonzalez*, No. 01-21-00729-CV, 2023 WL 4110851 (Tex. App.—Houston [1st Dist.] June 22, 2023, no pet.) (mem. op.). However, *Walsh* is distinguishable. In that case, the attorney simply offered testimony that: "If this is appealed, [she] would estimate that the attorney's fees on appeal would be approximately $10,000 to the appellate court and $10,000 to the Texas Supreme Court." *Id.* at *11 (alteration in original). Because the attorney did not testify to the services she reasonably believed would be necessary for appeal or

the hourly rate for those services, a panel of this court concluded the testimony was insufficient to support the award of appellate attorney's fees. *Id.* at *12 (citing *Yowell II*, 620 S.W.3d at 355). The panel also noted the trial court erred in awarding appellate attorney's fees that were not contingent on the results of any appeal. *Id.* at *11 n.6.

In this case, however, the attorney's fee affidavit describes the "reasonable attorneys' fee for an appeal to the court of appeals," for responding to a petition for review in the Texas Supreme Court, and for briefing the issue to the Texas Supreme Court if it granted review. The affidavit also states the hourly rate for those services. Further, unlike the trial court in *Walsh*, here the trial court conditioned the award of appellate attorney's fees on Angelino's unsuccessful appeals to the court of appeals and Texas Supreme Court. Also, in *Walsh*, the party who was awarded attorney's fees only prevailed on some issues on appeal. She was only entitled to recover attorney's fees for those issues on which she prevailed, and she needed to segregate her recoverable fees from the unrecoverable fees. *Id.* at *12. Here, Shafaii Investments has prevailed on each appellate issue, so no segregation is necessary.

In sum, Shafaii Investments' attorney's fee affidavit provided sufficient evidence to support the trial court's award of conditional appellate attorney's fees in accordance with the standard the Supreme Court articulated in *Yowell*. Further, that evidence was not conclusory, it was uncontroverted in the trial court, and it was more

detailed than evidence this court has previously found insufficient. *Cf. Walsh*, 2023 WL 4110851, at *11–12. Therefore, we overrule Angelino's fourth issue.

## CONCLUSION

We affirm the trial court's judgment.


Gordon Goodman
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.